Twin Hills Memorial Park and Mausoleum Corporation v. Commissioner.
Twin Hills Memorial Park & Mausoleum Corp. v. Commissioner
Docket No. 45327.
United States Tax Court
T.C. Memo 1954-206; 1954 Tax Ct. Memo LEXIS 35; 13 T.C.M. (CCH) 1076; T.C.M. (RIA) 54321; November 30, 1954, Filed *35 Petitioner, a cemetery corporation, keeps its books and reports its income on an accrual basis. Substantially all of its sales of burial lots are made on an installment plan. It has established a trust fund to provide for the perpetual care and maintenance of its cemetery. Under the terms of the sales agreements entered into with lot holders, petitioner is required to place in the trust 30 per cent of the gross sales price of each lot. In accounting for and reporting income, petitioner included the gross sales price of each lot in gross income for the year in which a sales contract was executed, under which a lot was sold. Its liability to pay to the trust 30 per cent of the proceeds from the sale of each lot was reflected on its books as an accrued expense of the year in which the lot was sold, and was deducted from gross income. It is held, upon the entire record, that 30 per cent of the purchase price of lots sold was impressed with a trust; held, further, that the part of the contract price, 30 per cent, which is impressed with a trust is, properly, excludable from the net amount of accruable receipts. David P. Brown, Jr., Esq., for the petitioner. Stephen P. Cadden, *36 Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined deficiencies in income tax for the fiscal years ended on June 30, of 1947, 1948, and 1949, in the amounts of $25,204.17, $5,544.48, and $935.82, respectively. In determining the deficiencies, the respondent made some adjustments in the amount of taxable income for each of the years involved which are not contested by the petitioner. Petitioner claims it has overpaid tax for 1947. The only issue to be decided is whether the petitioner, on an accrual basis, is entitled to exclude from gross income in each taxable year, with respect to the sales of cemetery lots which were made in each year, the portion of the contract price which is impressed with a trust for the perpetual maintenance and care of the cemetery. Petitioner's returns were filed with the Director (formerly Collector) of Internal Revenue for the twelfth District of Pennsylvania, at Scranton, Pennsylvania. Findings of Fact The facts which have been stipulated are found accordingly. The stipulation and exhibits are incorporated herein by this reference. The petitioner is a cemetery corporation; *37 it was organized for profit under the laws of Pennsylvania on June 3, 1946. Its principal office is located in Williamsport, Pennsylvania. Petitioner's books of account are maintained and its returns are made on an accrual basis. It keeps its books and makes its returns on the basis of a fiscal year ended on June 30. Petitioner was organized to operate, and at all times material hereto has operated a memorial burial park and mausoleum known as Twin Hills Memorial Park, located in Lycoming County, Pennsylvania. It sells certain rights in burial lots and mausoleum space, and it maintains and cares for the cemetery grounds and buildings. Petitioner's charter is incorporated herein by this reference. Reference is made hereinafter to sales of cemetery lots. The laws of Pennsylvania (Purdon's Pa. Stat. Ann. 1941, Tit. 15, sec. 2852-209) require a cemetery corporation which is organized for profit to include in its articles of incorporation a provision that it will set aside at least 10 per cent of the gross proceeds from the sale of burial lots in trust and will apply the income therefrom to the perpetual care and maintenance of the cemetery. Petitioner's articles of incorporation *38 contain the required provision. Petitioner's directors, by a resolution adopted on June 16, 1946, authorized the creation of an irrevocable trust to provide for the perpetual care and maintenance of Twin Hills Memorial Park. On July 31, 1946, petitioner executed a Declaration of Trust for the aforementioned purposes. The Declaration of Trust, which is referred to hereinafter as the trust agreement is incorporated herein by this reference. The trust agreement provides, among other things, that the petitioner will pay over to the trustees at least 10 per cent of the sales price of each burial lot when the purchaser completes his payments and receives a deed to the lot, and that petitioner may at the discretion of the board of directors, pay over to the trustees a sum greater than 10 per cent of the sales price of each lot. Under the agreement, the trust income is to be paid over to the petitioner in quarterly, semi-annual, or annual installments as it directs. The income is to be applied by petitioner to the care and maintenance of the cemetery. Under the terms of the contracts of sale which petitioner entered into with lot purchasers during the taxable years, petitioner agreed *39 to place in the perpetual care trust not less than 30 per cent of the sales price when the purchaser completed his payments. The contracts contained the following provision: "Seller agrees that upon final payment of the purchase price as hereinbefore set forth for the herein described property, to set aside and place in trust in accordance with a trust agreement which is a part of this application purchase agreement and the terms of which the Purchaser accepts, a sum not less than thirty (30%) per centum of the purchase price and that said sum and the income therefrom shall be used for the perpetual care and preservation of the grounds and the repair and renewal of the buildings and property of TWIN HILLS MEMORIAL PARK AND MAUSOLEUM CORPORATION." During the years involved, approximately 95 per cent of the petitioner's sales of burial lots were made on an installment plan. Under the terms of the contracts of sale, a down payment was required with the balance of the contract price payable in installments over a maximum period of two years. When a purchaser completed his payments under the contract, he received a deed to the lot under which burial rights were conveyed subject to the *40 rules and conditions governing the use of the cemetery. The deeds which were delivered by petitioner during the period in question contained a covenant whereby petitioner agreed perpetually to cause the grass on burial lots to be cut at reasonable intervals, and to keep in repair and condition all drives, walks, trees and borders in the cemetery. It was the petitioner's policy to cancel any unpaid balance due under a contract with a lot purchaser and to deliver a deed to the lot in the event of the death of a purchaser whose payments were not in default. Petitioner's sales of burial lots were recorded in its books of account in the following manner: Petitioner accrued in gross income in the year in which a lot was sold, that is, the year in which a contract of sale was executed, the entire gross sales price, undiminished by the percentage thereof which petitioner was obligated to place in the perpetual care trust. The book entries made to record a sale were as follows: a debit to cash, to record the down payment; a debit to accounts receivable, to record the balance due under the contract; and a credit to sales, to record the gross sales price. Lot sales were recorded in the books *41 at the time each contract was executed. Petitioner's liability to place 30 per cent of the gross sales price in the perpetual care trust was reflected in its books in the following manner: Petitioner accrued as an expense in the year in which a lot was sold, 30 per cent of the gross sales price of the lot. The book entries consisted of a debit to an expense account, "cost of permanent care", and a credit to a reserve account, "reserve for permanent care", in an amount equal to 30 per cent of the gross contract price. The book entries to reflect petitioner's liability to the trust were made at the end of each quarter of its fiscal year. Proper adjustments were made quarterly for contracts which were forfeited for defaults in payments, or which were cancelled for other reasons, and which became "fully paid" by reason of the death of a purchaser (pursuant to the policy which petitioner followed in such cases). Petitioner, at the end of each quarter of its fiscal year, made payments to the trust in amounts equal to 30 per cent of the gross contract price of all sales contracts which became "fully paid" during the quarter. The amounts paid to the trust were credited to the account, *42 "reserve for permanent care", on petitioner's books. During the fiscal years in question, the total amounts paid by petitioner to the trust on account of completed contracts were as follows: Fiscal
Payments
year
to trust
6/30/47
$22,384.94
6/30/48
19,315.06
6/30/49
15,011.52
During the fiscal years ended June 30, 1947, 1948, and 1949, the total gross contract prices of lots sold in those years, and the total amounts accrued by petitioner to reflect its liability under the contracts for perpetual care were as follows: Total
Accrued expense,
Fiscal
contract
cost of
year
prices
permanent care
6/30/47
$257,284.46
$77,185.34
6/30/48
128,476.12
38,542.84
6/30/49
69,821.16
20,946.36
The petitioner in its returns for each of the taxable years, reported in gross income the total amounts of contract prices set forth above, and it deducted from gross income, as an accrued expense, the amounts set forth above for cost of permanent care. Respondent, in his audit of petitioner's returns, allowed as deductions only the amounts actually paid to the trust, as set forth above. He disallowed in each year deductions of "Accrued Expense, *43 Cost of Permanent Care", set forth above. That is to say, he determined that petitioner could not accrue and deduct in the year of the execution of sales contracts, 30 per cent of the sale price, the amount dedicated to the perpetual care trust. In petitioner's return for the fiscal year ended June 30, 1947, petitioner deducted a net operating loss carry-back from the fiscal year ended June 30, 1949 in the amount of $4,763.49. In its petition, the petitioner presents the question whether it is entitled to a deduction in 1947 for a net operating loss carry-back from 1949. The petitioner has filed with the collector of Internal Revenue a claim for refund (Form 843), with respect to the fiscal year ended June 30, 1947, claiming a refund of 1947 corporation normal and surtax in the amount of $2,523.06. The claim for refund is supported by an "Application for Tentative Carry Back Adjustments". The parties have agreed that if this Court determines that petitioner is entitled to a deduction in the amount of $20,946.36 for the fiscal year ended June 30, 1949 for "Accrued Expense, Cost of Permanent Care", then petitioner's net operating loss for the fiscal year ended June 30, 1949 shall be *44 computed accordingly under Rule 50. Thirty per cent of each contract price, under the agreements between petitioner and the purchasers of lots, is impressed with a trust for the perpetual care of the cemetery. Opinion The only issue for decision is whether the petitioner, on an accrual basis, is entitled to exclude from gross income, with respect to sales of cementery lots which were made in each year, the portion of the sales price which is impressed with a trust for the perpetual care of the cemetery. The petitioner relies upon ; and . Upon careful consideration of the evidence, it is concluded that there was in each sales contract a covenant of the petitioner with each purchaser which obligated petitioner to set aside 30 per cent of the purchase price in a perpetual care trust fund and that this covenant was sufficient to impress such portion of the contract price dedicated to the perpetual care trust with a trust. Indeed, the law of Pennsylvania which applied to the petitioner, and the petitioner's charter, requires that the petitioner set aside *45 and place in trust a portion of the price of a cemetery lot for perpetual care. It is held that under each contract of sale, 30 per cent of the sale price is impressed with a trust. We do not believe that the respondent seriously contends otherwise. He admits that a valid and legally recognizable trust was created by the petitioner for the maintenance and care of the cemetery. He recognizes, also, that the petitioner, in accordance with its covenant with purchasers, actually made payments into the trust fund. Having disposed of what seem to be preliminary questions, we come to the main question. That question essentially is how the petitioner shall report in its income tax returns the sales which it makes in each year of cemetery lots. In , we said (at page 24), that "* * * Where the accrual method is employed the full amount of the contract price, less the 10 percent set aside for the perpetual care trust fund, should be reported in the year of sale." In , the taxpayer, on an accrual basis, in reporting its annual sales of cemetery lots, excluded from income the portion *46 of each sales contract price which was deducated to a perpetual care trust, and included the net amount of sales in income. That was done in accordance with the established rule which is set forth above. The Court of Appeals, in reviewing our determination, agree that, the portion of the contract price which was dedicated to perpetual care was properly excluded from the gross income. The court said that "The association merely acted as a collection channel for the money which would be deposited in the trust fund." In this case, the taxpayer has not departed from the approved rule. The petitioner, for the year in which a contract was executed, accrued on its books and reported in its returns the full amount of the contract price, and then took a deduction in its return of the accrued expense of the 30 per cent of the contract price which was impressed with a trust. The net result is just the same as when a taxpayer includes in its return for each taxable year "the full amount of the contract price, less the * * * per cent set aside for the perpetual care trust fund." In other words, whether the amount required to be set aside in a perpetual care trust is regarded as a diminution of *47 the purchase price of the lot, or, being an obligation undertaken by the taxpayer in connection with the entire agreement, is regarded as an accruable deduction, the result is the same for purposes of taxation. Where, as here, the taxpayer treats the amount required to be set aside in the perpetual care fund as an accrued expense for a legal obligation, it actually excludes from taxable income the part of the contract price which is impressed with a trust, and that treatment is in accord with the established rule. The part of the contract price which is impressed with a trust does not become part of the taxpayer's income. It follows that the respondent's determination is wrong. Since part of the sale price is excluded from income because it is impressed with a trust, no deduction is allowable for such part of the sale price even when it is paid into the perpetual care trust. Respondent's treatment is in conflict with the rule announced in , and cases cited therein; ; and The respondent has taken exactly the same position *48 here which he took in , and in other cases. The respondent does not agree with the rule which now is established by the cited authorities. He continues to take the view, which the courts have rejected, that a taxpayer, such as the petitioner, on an accrual basis, must report in income the entire contract price without diminution for the portion which is impressed with a trust for perpetual care, deducting in the year of payment, the sums paid into a perpetual care trust. Since the respondent's theory is contrary to the established rule, we must here reverse his determination. This proceeding, on its facts, is not distinguishable from The petition raises an issue whether petitioner is entitled to a deduction for a net operating loss carry-back for the fiscal year ended June 30, 1947. It has been agreed by the parties that this matter will be disposed of under a Rule 50 computation in accordance with the Court's determination of the issue presented. Decision will be entered under Rule 50.